ANNIS v. POSTAL TELEGRAPH COMPANY ET AL.

[No. 17,164. Filed January 11, 1944. Rehearing denied February 7, 1944. Transfer denied March 7, 1944.]

*Gilbert Butler,* of Martinsville, and *Gavin & Gavin* and *Seth S. Ward,* all of Indianapolis, for appellant.

*Alex Asch* and *Newberger, Simon & Davis,* all of Indianapolis, and *Homer Elliott,* of Martinsville, for appellees.

CRUMPACKER, C. J.—This is an action for damages brought by the appellant, Anna L. Annis, against the appellees, Postal Telegraph Company and the Postal Telegraph-Cable Company of Indiana, in which it is alleged that the appellees had a messenger boy in their employment who was engaged in their behalf in the delivery of a telegram on foot when he negligently collided with the appellant on a public sidewalk whereby she sustained personal injuries. A demurrer to the appellant's complaint was sustained by the court; she refused to plead further and judgment was entered accordingly. From such judgment this appeal is taken, and the sole error assigned is the court's ruling on said demurrer.

We gather from the briefs of counsel and oral argument that the trial court sustained the appellant's demurrer to the complaint solely on the ground that it discloses on its face that the accident in controversy occurred upon a public sidewalk and that the sole means of locomotion used by the messenger boy, upon and over said sidewalk, was his own legs, the negligent use of which was the proximate cause of the accident. That the use of his legs and the use of the sidewalk were both uses in his own right that were not and could not be given or delegated to him by the appellees. That to such a state of facts the doctrine of *respondeat superior,* upon which the appellant relies for recovery, has no application.

An unbroken chain of authority in this State, extending over a period of many years and repeatedly

announced, holds that in determining the question of *respondeat superior* the real test is whether at the time the employee commits the negligent act, resulting in injury to a third person, he is engaged in performing some duty within the scope of his employment. We are now asked to narrow or limit the application of this doctrine by holding that it is only when a servant uses a vehicle or other instrumentality owned, controlled or directed by his master, as a means of locomotion upon a public highway, that the master can be held liable for the negligence of his servant, which negligence is predicated solely upon the manner of such locomotion.

It has always been the law of this State that when a person hires another to do something for him and the employee so hired does the thing he is employed to do in a negligent manner whereby a third person is injured, the employer is liable to respond in damages. That, in a broad sense, is the doctrine of *respondeat superior*, and we can find no precedent in Indiana for the limited application the appellees seek. It must be said, however, that the precise question here presented has never been decided in this State and the matter therefore becomes one of first impression.

In support of their position the appellees rely upon two Missouri cases, *Phillips* v. *W. U. Tel. Co.* (1917), 270 Mo. 676, 195 S. W. 711, L. R. A. 1917 F, 489, and *Ritchey* v. *Western Union Telegraph Co.* (1931), 227 Mo. App. 754, 41 S. W. (2d) 628. On its facts the Phillips case is very similar to the one at bar. Phillips was standing on the curb of a public sidewalk waiting to cross the street with the traffic signal. A messenger boy employed by the Western Union Telegraph Company and engaged, for his employer, in the delivery of

a telegram came running along the sidewalk, looking backward over his shoulder at a newsboy from whom he had just snatched a paper, and collided with said Phillips with such force that she was knocked down and severely injured. There was trial, verdict and judgment for the plaintiff. The decision of the Supreme Court of Missouri, in reversing such judgment, so clearly states the appellees' position here and so palpably furnishes the reason for the trial court's ruling on the demurrer in the present case that we quote from the same as follows:

"In going into the consideration of this case it is well to have in mind that the boy who caused the injury which is the subject of the suit was not traveling on the street by permission of his codefendant, but in the exercise of a public right valuable to himself as a facility for gaining a livelihood as well as to his employer. Had he not possessed this right his employer could not have conferred it nor taken it away. It went with his services as far as it was necessary to the performance of the duty involved, and no further. In all other respects and for all other purposes it remained his own. It was like his health and strength, a part of his own equipment for the services in which he was engaged. We cannot arbitrarily assume that by the terms of his employment he was forbidden to seek, while on these trips, his own pleasure or profit in any manner consistent with the performance of his whole conventional duty, nor was the defendant under any obligation to so restrain his liberty of action, in the ordinary use of the public easement, although should it authorize him to commit a wrong, as by inciting him to dangerous speed in a crowd, it would be liable for the consequences upon familiar principles unconnected with any issue in this case, and having no connection with the relation of master and servant. . . .

"Had this boy been furnished by the defendant with a horse to ride or an automobile to transport him in the performance of his duties, his man-

agement of these facilities would have been the management of his master, which would have been liable for his acts and omissions in such management. . . ."

In *Ritchey* v. *Western Union Telegraph Company, supra,* a messenger ran out of a building with his head down and collided with a pedestrian on the sidewalk. There was a judgment for the defendant which was appealed to the Kansas City Court of Appeals and affirmed by that court upon the authority of the Phillips case with these remarks: "Whether the doctrine of the Phillips case is sound or unsound is not for this court; it is controlling notwithstanding holdings in other jurisdictions to the contrary." Thus it would seem that even in the state of its origin the Phillips decision is accepted with some degree of skepticism as to its soundness and wisdom. To us its logic and reasoning seem fallacious. It is true that the messenger boy involved in the present case had the right to use the public street as a facility for gaining a livelihood and that right was not or could not be bestowed upon him by the appellees or withdrawn by them. It is equally true, however, that the appellees had the right to use said street in furtherance of their own business and had the further right to require said messenger to use the same for their purposes. If one uses a public highway with a careless disregard for the rights of others rightfully thereon and such carelessness results in injury to another who is without fault, the wrongdoer must respond in damages. The fact that such use is exercised through a servant cannot alter the rule if the careless use of the public highway is within the scope of the servant's employment. As a means of transportation or locomotion, we can see no logical distinction in principle between human

legs, furnished by a servant to be used in his master's business, and an automobile furnished by the master. Human legs, like an automobile, when used carelessly may be dangerous and, if so used in the master's business, we see no valid reason to repudiate the doctrine of *respondeat superior* simply because they are a part of the equipment furnished by nature to enable a man to move about in quest of a livelihood. A messenger boy may deliver telegrams on foot or he may use a bicycle furnished by his employer. In either event he cannot be careless in the manner in which he uses his legs or the bicycle in the scope of his employment without rendering his master liable for the proximate results of his negligence.

The true test of a master's liability for the negligence of his servant is not necessarily predicated upon the instrumentality used or by whom it is furnished. In any event, we think, a master is subject to liability for physical harm to a third person caused by the negligent conduct of his servant, within the scope of his employment, if such third person is without fault that contributes to his own injuries. We know of no rule of wider application or more general recognition and our inquiry into the matter leads us to the conclusion that the Phillips and Ritchey cases stand alone in holding that the rule of *respondeat superior* has no application to the acts of a servant on a public highway using no instrumentality furnished, controlled or sanctioned by his employer.

In speaking of the Phillips case the St. Louis Law Review has this to say: "The case is interesting in presenting the view that a master's vicarious liability under the rule of *respondeat superior* will not result from an act performed by the servant in a method or manner incident to his rights as a public citizen.

. . . To preclude the vicarious liability of the master because a servant makes use of the public right, to which use the master gives the original impetus, would unduly narrow the operation of the rule of *respondeat superior."* 17 St. Louis Law Review 279.

Except for Missouri all jurisdictions where this question has arisen in connection with facts similar to that involved in the case at bar, the courts have held that the rule of *respondeat superior* applies. The cases so holding are herewith reviewed in brief. In *Schediwy* v. *McDermott* (1931), 113 Cal. App. 218, 298 P. 107, an employer was held liable to a pedestrian bumped and knocked down on the sidewalk by the employer's deliveryman, on foot, after making a delivery. In *Missouri K. & T. R. Co.* v. *Edwards* (1902), Court of Civil Appeals of Texas, 67 S. W. 891, a railroad company was held liable to a pedestrian who was run into and knocked down by its brakeman who was returning on foot from a restaurant to his train. Dun & Bradstreet was held liable for the acts of its messenger or "route" boy in carelessly operating a revolving door whereby a third person was caught and injured. The court, however, distinguished this case in that the messenger was not upon the public highway at the time of the accident and was not using his health and strength alone but also an instrument which, although not owned by his employer, he was required to use in order to enter the building on his master's business. *Salmon* v. *Dun & Bradstreet* (1942), 349 Mo. 498, 162 S. W. (2d) 245. A delivery boy for one Leong Cheung collided with a pedestrian while he was running across the sidewalk after having made a delivery to an abutting store, and the master was held liable for the servant's tort. *Tighe* v. *Ad Chong, et al.* (1941), 44 Cal. App. (2d) 164, 112 P. (2d) 20. In the case of

*Hobra et ux.* v. *Postal Telegraph-Cable Company* (1943), Wash. Sup. Ct., 141 P. (2d) 648, two employees of the defendant company, in the capacity of messengers about their employer's business in delivering telegrams, collided with the plaintiff to her injury. All persons involved were on foot and on a public street at the time of the accident. In affirming judgment for the plaintiff the court held that the rule of *respondeat superior* applied even though the negligent conduct of such employees lay solely in their manner of locomotion while on foot.

It is difficult to justify the reason underlying a holding that the negligent conduct of a servant is not within the scope of his employment, if at the time of the injury such servant is using a public highway in his own right and the means of locomotion used is solely that with which nature endowed him. It is our firm opinion that scope of employment is not dependent on time, place or the instrumentality of locomation used but rather is it determined by the connection of the negligent act with the employment.

Judgment reversed with instructions to overrule the appellees' demurrer to the complaint.

NOTE.—Reported in 52 N. E. (2d) 373.