AUBREY GIBBS ET AL. *v.* GENE MILLER ET UX.

[No. 1171A244. Filed June 12, 1972. Rehearing denied July 27, 1972. Transfer denied November 27, 1972.]

*Arthur A. May, Crumpacker, May, Levy and Searer,* of South Bend, for appellants.

*Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, *David L. Matthews,* of South Bend, for appellees.

HOFFMAN, C.J.—The primary issue presented by this appeal is whether the negligence of Aubrey Gibbs may be imputed to Sears, Roebuck and Company (Sears) under the theory of respondeat superior.

The facts viewed most favorably to appellees may be summarized as follows:

Aubrey Gibbs was employed by Sears as a ·"commission" salesman in their floor covering department. He was paid a commission on the sales made by him and accepted by Sears. In addition thereto, he received a draw of $100 per week and nine cents per mile as reimbursement for mileage in making calls on prospective customers. He also received fringe benefits of insurance, profit sharing and paid vacations.

·Gibbs testified that he usually worked from 40 to 45 hours per week. He testified that he was scheduled to work from

28 to 32 hours per week in the store and the remainder of his time was spent in making calls on prospective customers outside the store. He testified that most of his prospects consisted of "contacts" he made while working on the floor, and that if he made a contact with prospects on the floor he would then set up a definite appointment at the customers' convenience to go to their home.

On November 6, 1969, Gibbs was not scheduled to work in the store. However, he had made several appointments to see prospective customers. His first appointment was at 10:30 A.M. in Elkhart, the second was also in Elkhart at 2:30 P.M., and the third was at 4:30 P.M. in Mishawaka. The 10:30 A.M. appointment involved a sale from which Gibbs received his commission. He also testified that he received his mileage reimbursement for the trip to Elkhart.

Gibbs testified that after the 10:30 A.M. appointment he left the customer's house to return to his own home in South Bend for lunch. He testified that Sears had not given directions concerning the routes to take, and that he had no scheduled time to stop for lunch. He also testified that he did paper work at home. While enroute to his home for lunch Gibbs negligently collided with an automobile driven by Gene Miller.

On March 18, 1970, plaintiff-appellees Gene and Christine Miller filed their amended complaint against Gibbs, Sears and C. T. Corporation System, Agent, alleging, *inter alia*, that Gibbs, while within the scope of his employment with Sears negligently drove his automobile into a motor vehicle driven by plaintiff-Gene Miller and demanding judgment for damages to plaintiff-Gene Miller in the amount of $115,000 and judgment for damages to plaintiff-Christine Miller in the amount of $50,000 for loss of consortium of her husband.

The defendants filed their answer containing, *inter alia*, a denial of the allegations of the amended complaint. Trial was to a jury which returned a verdict for plaintiff-Christine Miller awarding her damages in the amount of $7,500, and

for plaintiff-Gene Miller awarding him damages in the amount of $30,000. Judgment was entered on the verdict. After the motion to correct errors filed by Sears was overruled by the trial court, this appeal was perfected.

On appeal Sears first contends that the uncontradicted evidence shows that at the time of the collision Gibbs was on his day off, and was returning from a call on a prospective customer to his own home for lunch. Therefore, Sears contends Gibbs' negligence cannot be imputed to Sears under the doctrine of respondeat superior. In support of this contention Sears cites the following cases: *Reinhart* v. *Ideal Pure Milk Co., Inc.* (1963), 135 Ind. App. 338, 193 N. E. 2d 655; *City of Elkhart* v. *Jackson* (1937), 104 Ind. App. 136, 10 N. E. 2d 418; *Neyenhaus* v. *Daum, Admr.* (1936), 102 Ind. App. 106, 1 N. E. 2d 281. These cases merely show the general rule that usually an employee is not within the scope of his employment during the lunch period. However, the determination of whether an employee is acting within the scope of his employment at the time of an accident is a factual determination to be made in light of the facts and circumstances peculiar to each case. *Reinhart* v. *Ideal Pure Milk Co., Inc., supra.*

Generally, a master is liable for the torts of his servant committed while such servant is acting within the scope of his employment. *Great American Tea Co.* v. *Van Buren* (1941), 218 Ind. 462, 33 N. E. 2d 580; *Princeton Coal Co.* v. *Dowdle* (1924), 194 Ind. 262, 142 N. E. 419. This long adhered to rule is referred to in Indiana as the doctrine of respondeat superior. *Annis* v. *Postal Telegraph Co.* (1944), 114 Ind. App. 543, 546, 52 N. E. 2d 373 (transfer denied).

The general test in determining the existence of a master-servant relationship is the right to direct and control the conduct of the alleged servant at the time the negligent act occurred. *Railway Express Agency, Inc.* v. *Bonnell* (1941), 218 Ind. 607, 33 N. E. 2d 980, 34

N. E. 2d 927; *Lieber Exrx.* v. *Messick* (1930), 92 Ind. App. 264, 173 N. E. 238. In Indiana the phrase "right to control" is used not in a specific sense but in a general sense. It refers only to the *right* and not the exercise of control over the servant. This is especially true where the work is such as to not demand a great deal of supervision. *Palmer* v. *Stockberger* (1963), 135 Ind. App. 263, 193 N. E. 2d 384; *N. Y. Cent. R. R. Co.* v. *Northern Ind. Pub. Ser. Co.* (1966), 140 Ind. App. 79, 221 N. E. 2d 442. Among the indicia of a master-servant relationship are the right to discharge, mode of pay- ment, supplying of tools or supplies by the employer, belief by the parties in the existence of a master-servant relationship, control over the means used or result reached, length of employment and the establishing of work boundaries. *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N. E. 293; Restatement (Second) of Agency, § 220, at 485 (1958).

Prior cases have held the conduct of a servant to be within the scope of his employment where the conduct was actuated to an appreciable extent by the purpose to serve the master, *Great American Tea Co., supra;* where the conduct was performed substantially within the authorized time, *Vincennes Packing Corp.* v. *Trosper* (1939), 108 Ind. App. 7, 23 N. E. 2d 624 (transfer denied); or where the work is the kind the servant is employed to perform, *Biel, Inc.* v. *Kirsch* (1958), 240 Ind. 69, 161 N. E. 2d 617.

In the instant case, the evidence shows that the day of the accident was scheduled as Gibbs' day off, and at the time of the accident Gibbs was returning to his home for lunch. These facts, however, are not alone controlling. The evidence, as hereinbefore summarized, shows that in going to the 10:30 A.M. appointment in Elkhart, Gibbs was engaged in a task incidental to his everyday employment, that is, calling on a prospective customer. In fact the sale was completed and Gibbs received the commission therefrom. At the time of the accident Gibbs was returning from this appointment. He was carrying samples and supplies furnished by Sears and had the

sales contract in his posession. He had other appointments scheduled later in the day, and he telephoned Sears immediately after the collision to cancel these appointments. He was within Sears' area of distribution and was exercising the discretion allowed him by Sears in choosing the routes to take and times for scheduling his appointments. He testified that he often did paper work at home. He also testified that he was reimbursed for his mileage both to and from Elkhart.

This court will not weigh the evidence. It is only where the evidence is without conflict and will lead to a conclusion contrary to the one reached by the trial court will the decision be reversed. *Etcherling* v. *Jack Gray Transport, Inc.* (1971), 148 Ind. App. 415, 267 N. E. 2d 198, 24 Ind. Dec. 682.

None of the facts contained in the record before us, standing alone, are sufficient to support the verdict of the jury. However, considering all of the evidence and the reasonable inferences to be drawn therefrom, we cannot say as a matter of law that the imputation of Gibbs' negligence to Sears under the doctrine of respondeat superior was erroneous. There is sufficient evidence in the record before us, together with reasonable inferences flowing therefrom, from which the jury could have found that a master-servant relationship existed between Sears and Gibbs and that at the time of the accident Gibbs was acting within the scope of his employment.

For this reason, the trial court committed no error in overruling Sears' motion for summary judgment, motion for judgment on the evidence at the conclusion of plaintiffs' case and motion for judgment on the evidence at the conclusion of all the evidence.

Sears contends that the negligence of Gibbs cannot be imputed to it because Gibbs was employed as an independent contractor. We cannot agree.

In *Nash* v. *Meguschar* (1950), 228 Ind. 216, at 220-221, 91 N. E. 2d 361, at 363, it was held:

"Our courts have been unable accurately to define the term 'independent contractor' to govern in all cases. As a

result there are many definitions and frequently a new set of facts brings forth a variation from all existing definitions. A fairly accurate definition of the term as applied to the facts in the instant case is contained in 27 Am. Jur., Independent Contractors, § 2, p. 481, thus:

> " 'Perhaps one of the most frequently quoted is to the effect that an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work.'

"See also *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 596, 106 N. E. 365. In that case at page 597 this court said:

> " 'When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer, does not render the person contracted with to do the work a servant.' (authorities)"

In the instant case, there was no evidence whatsoever that Gibbs was exercising an independent employment. The uncontroverted evidence shows that Gibbs had worked in the same position for 19 years, that he received certain fringe benefits as heretofore set forth, his hours of work in the store were determined by Sears and he worked in the floor covering department in the Sears' store.

We realize that the type of work involved herein usually does not necessitate a great deal of direct supervision. Yet this fact alone does not render a salesman an independent contractor, although in certain instances a commission salesman or manufacturer's representative could properly be classified as such. Here, the evidence in the record before us leads only to the conclusion that Gibbs was an employee of Sears. The trial court did not err in refusing to give defendant's tendered Instruction No. 3 which would have instructed the jury on the definition of an independent contractor. Such theory is not supported by the evidence.

Sears next contends that the trial court erred in refusing to give its tendered Instructions Nos. 4 and 10 and erred in

modifying Sears' tendered Instruction No. 1 by deleting therefrom rhetorical paragraph two.

Sears' tendered Instruction No. 1 reads as follows:

"DEFENDANT'S REQUESTED INSTRUCTION NO. 1

"In this case as it regards Sears, Roebuck & Co., the plaintiff has the burden of proving the following propositions by a fair preponderance of all of the evidence:

"1. That at the time and place complained of by the plaintiffs in their complaint the defendant, Aubrey Gibbs, was acting as the servant or employee of the defendant, Sears, Roebuck & Co.

"2. That the trip that Aubrey Gibbs was on at the time and place alleged in the complaint, he, Aubrey Gibbs, was under the power and control of Sears, Roebuck & Co. and subject to the orders and directions of Sears, Roebuck & Co.

"3. That the defendant, Aubrey Gibbs, was guilty of negligence and that as a proximate result thereof the plaintiffs suffered certain personal injuries and damages.

"4. That the payment made by Aubrey Gibbs to the plaintiffs is not enough money to fully and fairly compensate the plaintiffs for their injuries and damages received in the accident involved in this law suit.

"If you should find that the plaintiffs have failed to prove one or more of the above propositions by a fair preponderance of all of the evidence, then your verdict should be for the defendant, Sears, Roebuck & Co. and against the plaintiffs on their complaint."

Sears' tendered Instructions Nos. 4 and 10 read as follows:

"DEFENDANT'S REQUESTED INSTRUCTION NO. 4

"I instruct you that in this case the defendant, Sears, Roebuck & Co., is not being charged with any independent act of negligence. It being contended that Sears, Roebuck & Co. is libel for the acts of negligence, if any, of Aubrey Gibbs at the time and place alleged in the complaint.

"I instruct you that unless you find by a fair preponderance of all of the evidence that Sears, Roebuck & Co. have the right or power to command or forbid the act or omission that resulted in the injuries complained of by the plaintiffs, to-wit: the operation of the automobile of Aubrey Gibbs, the negligence, if any, of Aubrey Gibbs would not

be imputed to Sears, Roebuck & Co. and your verdict should be for the defendant, Sears, Roebuck & Co. and against the plaintiffs in this cause of action.

"DEFENDANT'S REQUESTED INSTRUCTION NO. 10

"In this case the negligence, if any, of Aubrey Gibbs will become the negligence, if any, of Sears, Roebuck & Co. only if Aubrey Gibbs was at the time and place of the collision in question engaged in the transaction of business which had been assigned to him by Sears, Roebuck & Co. and was under the power and control of Sears, Roebuck & Co. or was subject to the orders and directions of Sears, Roebuck & Co. in the trip or mission, if any, that Aubrey Gibbs was engaged in at the time of the collision in question."

These instructions, as tendered, tell the jury that the "right of control" is an essential element of the finding of an employer-employee relationship. They do not tell the jury that it is only necessary to find the existence of the "right of control" and unnecessary to find an actual exercise thereof. *Van Drake* v. *Thomas* (1942), 110 Ind. App. 586, 38 N. E. 2d 878. Therefore, these instructions would have been misleading and would have overemphasized the "right of control" aspect to the jury.

After deleting rhetorical paragraph two Sears' tendered Instruction No. 1 was given to the jury, as follows:

"In this case as it regards Sears, Roebuck & Co., the plaintiff has the burden of proving the following propositions by a fair preponderance of all of the evidence:

"1. That at the time and place complained of by the plaintiffs in their complaint the defendant, Aubrey Gibbs, was acting as the servant or employee of the defendant, Sears, Roebuck & Co.

"3. That the defendant, Aubrey Gibbs, was guilty of negligence and that as a proximate result thereof the plaintiffs suffered certain personal injuries and damages.

"4. That the payment made by Aubrey Gibbs to the plaintiffs is not enough money to fully and fairly compensate the plaintiffs for their injuries and damages received in the accident involved in this law suit.

"If you should find that the plaintiffs have failed to prove one or more of the above propositions by a fair preponderance of all of the evidence, then your verdict should be for the defendant, Sears, Roebuck & Co. and against the plaintiffs on their complaint."

The evidence in the record before us shows that Sears established the in-store hours, provided fringe benefits and accepted or rejected sales contracts. Gibbs testified that he had been employed in the same position for 19 years. Furthermore, the evidence allows the reasonable inference that the parties themselves believed in the existence of an employer-employee relationship. This evidence, together with the other evidence contained in the record and reasonable inferences therefrom, are sufficient evidence from which the jury could find the existence of the right of control necessary for an employer-employee relationship. The jury was sufficiently apprised of the law applicable to the facts by the giving of Sears' tendered Instruction No. 1, as modified, and, thus, there was no error by the trial court's refusal to give Sears' tendered Instruction Nos. 1, 4 and 10 as requested.

Sears also contends that the trial court erred in giving, over objection, Miller's tendered Instruction No. 7, which reads as follows:

"PLAINTIFF'S TENDERED INSTRUCTION NO. 7

"If you find from a preponderance of the evidence in this case that at the time and place of the collision alleged in the complaint that ~~the defendant~~, Aubrey Gibbs, was engaged in activity which served his own purposes, but at the same time served the business of Sears, Roebuck and Company to any appreciable extent, then you may find that Aubrey Gibbs was acting within the scope of his employment for Sears, Roebuck and Company." (Correction as appears in original.)

This appears to be a correct statement of law and is supported by *Great American Tea Co.* v. *Van Buren, supra,* and cases cited therein. See also: Restatement (Second) of Agency, § 228, at 504 (1958).

The final issue argued by Sears is that the trial court erred in refusing to admit into evidence telephone tape recorded statements given by Gibbs to the Allstate Insurance Company.

The record before us contains the testimony of Jack Brent, District Claims Manager for Allstate Insurance Company. Mr. Brent testified that he did not take the statements contained in the recordings and that he did not personally hear the recorded conversations. Gibbs testified that certain statements made to Allstate were recorded and that he had previously listened to one of the tape recordings but was unable to identify the same.

The court then made the following ruling:

"THE COURT: The Court's ruling will be that the objection is sustained on the grounds that 1) the disk constitutes hearsay, 2) self serving statement, 3) an improper foundation has been laid for the introduction of these exhibits."

The witness Brent, as shown by the record, had neither knowledge of the actual conversation nor the exact time, place or accurate recording thereof. Gibbs, although he testified that he did listen to one of the tape recordings, did not positively identify either of the recordings as the conversation between Allstate and himself. Therefore, the recordings were not identified as authentic or correct, and were properly excluded by the trial court.[1]

---

1. In the very recent criminal case of *LaMar* v. *State* (1972), 258 Ind. 504, 282 N. E. 2d 795, is found the following language:
"The admission of a sound recording should be preceded by a foundation disclosing the following:
(1) That it is authentic and correct;
(2) That the testimony elicited was freely and voluntarily made, without any kind of duress;
(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;
(4) That it does not contain matter otherwise not admissible into evidence; and
(5) That it is of such clarity as to be intelligible and enlightening to the jury."

Furthermore, the admission or exclusion of the recordings was a preliminary question of fact for the trial judge. Sears has shown no abuse of discretion with respect thereto.

Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 283 N. E. 2d 592.