**DALLAS MOSER TRANSPORTERS, INC., Appellant,**

v.

**David G. ENSIGN & Arthur Beauprecz, Appellees.**

No. 20A03–9201–CV–20.

Court of Appeals of Indiana, Third District.

June 16, 1992.

Rehearing Denied July 24, 1992.

James F. Groves, Hardig, Lee & Groves, South Bend, for appellant.

Floyd F. Cook, Kokomo, for appellee David G. Ensign.

Gregory Ball, South Bend, for appellee Art Beauprecz.

STATON, Judge.

Dallas Moser Transporters, Inc. ("Transporters") appeals a jury verdict which concluded that Transporters were vicariously liable for damages sustained by David Ensign and Arthur Beauprecz in an automobile collision. Transporters presents for our review two issues which we consolidate and restate as a single issue: whether the trial court was required to grant Transporters' motion for judgment on the evidence because plaintiffs failed to establish the existence of a master/servant relationship.

We affirm.

Transporters, a "driveaway" business located in Nappanee, Indiana, contracted with manufacturers of luxury vans to transport the vans to retailers under Transporters' interstate commerce authority. Individual drivers were dispatched from Transporters' Nappanee office to drive the vans to their destinations.

On April 17, 1987, Transporters dispatched Wayne Maggard to transport eight vans from Elkhart, Indiana to Piqua, Ohio. Maggard took possession of keys to each of the eight vans. However, he executed "Independent Contractor Agreements" pertaining to the delivery of only four vans. Four additional vans were moved to the Nappanee home of Maggard's parents for subsequent delivery.

With the assistance of three individuals, Maggard transported four vans to Paul Sherry Chevrolet in Piqua, Ohio.[1] Maggard towed his personal vehicle—to provide return transportation for the group—behind one of the vans. When Maggard arrived at Paul Sherry Chevrolet, no security guard was on duty. Maggard contacted the dispatcher at Transporters' office; the two agreed that Maggard would deliver the van keys to the dispatch office upon his return to retrieve the remaining four vans.

During the return trip to Nappanee—at approximately 9:00 a.m. on April 18, 1987—Maggard crossed the center line of U.S. Highway 33 and collided with a bus driven by Beauprecz. On November 4, 1987, Beauprecz, Ensign and representatives of the estates of Alice Maggard and William Holtzman filed a complaint against Maggard, Transporters, and Jet Force, Inc.[2] The complaint alleged alternative bases supporting Transporters' liability: Interstate Commerce Commission regulations and *respondeat superior*. Summary judgment was granted in favor of Transporters on the issue of liability under ICC regulations.[3] The issue of master/servant liabili-

---

1. Two of the other drivers were "approved" drivers who had previously transported vehicles for Transporters. Ensign had not applied for employment with Transporters; nor had he initiated the "approval" process required of drivers by Transporters' insurer.

2. The actual trial was reduced to claims by Ensign and Beauprecz against Maggard and Transporters.

3. The grant of partial summary judgment has not been appealed. Uncontroverted evidence established that Maggard was not, at the time of the accident, transporting a vehicle pursuant to

ty was tried before a jury.[4]

Transporters—electing to present no defense—requested judgment on the evidence at the conclusion of the plaintiffs' case-in-chief. The motion was denied, and the jury returned verdicts against Maggard and Transporters. On appeal, Transporters argues that the issue of its vicarious liability should not have been submitted to the jury because there exists no evidence to show that Maggard was subject to Transporters' control and therefore acted as Transporters' servant.

■ The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *City of Crawfordsville v. Michael* (1985), Ind.App., 479 N.E.2d 102, 103, *trans. denied.* Where the issues tried are not supported by sufficient evidence or a verdict is clearly erroneous as contrary to the evidence, the court shall withdraw such issues from the jury and enter judgment thereon. Ind.Trial Rule 50(A). When the trial court considers a motion for judgment on the evidence, it must view only the evidence most favorable to the non-moving party and the reasonable inferences to be drawn therefrom. Judgment may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Dahlin v. Amoco Oil Corp* (1991), Ind.App., 567 N.E.2d 806, 810, *trans. denied; Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1224. The reviewing court is bound by the same standard. *Id.*

■ A common carrier charged with liability under the doctrine of *respondeat superior* may be entitled to judgment as a matter of law where the facts are undisputed and there is no evidence to support a conclusion that a master-servant relationship existed between the carrier and driver at the time of an accident. *Watson v. Tempco Transp., Inc.* (1972), 151 Ind.App.

644, 281 N.E.2d 131, 134, *reh. denied.* A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right of control by the master. *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099, 1101-2. The general test of determining the existence of a master-servant relationship is the right to direct and control the conduct of the alleged servant at the time of the negligent act. *Gibbs v. Miller* (1972), 152 Ind.App. 326, 330, 283 N.E.2d 592, 594-5, *reh. denied.* The nexus between the "right to control" and the imposition of vicarious liability was recently discussed by this court in *Bitzer v. Pradziad* (1991), Ind.App., 571 N.E.2d 593, *trans. denied:*

> "The estate contends that there was evidence from which the jury could have determined that Pradziad was acting as an agent for the department in picking up the membership cards and dues payments and therefore the question of the department's liability should have been submitted to the jury.

> The argument has a critical flaw which was succinctly stated by the writer in 3 Am.Jur.2d, *Agency*, § 280, p. 783:

>> The general rule that a principal is liable for the torts of his agent is not grounded on agency principles ... [T]he tort liability is based on the employer and employee, rather than any agency, principle; the liability for the tortious act of the employee is grounded upon the maxim of 'respondeat superior' and is to be determined by considering, from a factual standpoint, the question whether the tortious act was

---

4. The trial was bifurcated. After a jury verdict was returned on the issue of liability, trial proceeded on the issue of damages. Neither Maggard or Transporters has appealed the finding that Maggard acted negligently.

an ICC permit. The independent contractor—master/servant distinction has been eliminated for lease arrangements under ICC regulations. *Rediehs Exp., Inc. v. Maple* (1986), Ind.App., 491 N.E.2d 1006, 1011, *reh. denied, cert. denied* (1987) 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762.

done while the employee, whether agent or servant, was acting within the scope of his employment.

This is the accepted view in Indiana. *Estate of Mathes v. Ireland* (1981), Ind. App., 419 N.E.2d 782; *Bryan v. Pommert* (1941), 110 Ind.App. 61, 37 N.E.2d 720.

The reason for this is that in our system of tort liability based upon fault, it is the right of the party sought to be held liable to control the conduct of the person who actually caused the injury that creates the necessary nexus. Thus, our decisions have focused upon the necessity of the party sought to be held liable having the right or power to control the other's conduct, whether or not the power is exercised."

*Id.* at 596 [Citations Omitted].

■ In contrast, the employer of an independent contractor is generally not liable for the torts of that contractor. *Hale v. Peabody Coal Company* (1976), 168 Ind. App. 336, 343 N.E.2d 316. As a general rule, an "independent contractor" controls the method and details of his task and is answerable to the principal as to results only. *Crabill v. Livengood* (1967), 142 Ind. App. 624, 231 N.E.2d 854.

"When the person employing may prescribe what shall be done, but not how it is to be done, or who shall do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer does not render the person contracted with to do the work a servant."

*Hale, supra,* 343 N.E.2d at 321, quoting *Prest–O–Lite Co. v. Skeel* (1914), 182 Ind. 593, 106 N.E. 365.

■ However, where the work to be performed is that of driving a vehicle, the question of control over the details of the work performed is not dispositive of the ultimate issue of whether the driver was an employee or an independent contractor. *Stone v. Pinkerton Farms, Inc.* (1984), 741 F.2d 941, 945.

"The control asserted by a principal is, in essence, the same as the control asserted by an employer when the work to be done is driving a truck from one place to another. An employer cannot discharge a driver feasibly while the driver is en route from one location to another; likewise a contract with an independent contractor cannot be broken en route without difficulty. The question of control over the work does not lead to an inference supporting either party."

*Id.*

■ To withstand a motion for judgment on the evidence, the plaintiffs were obliged to offer some evidence supporting an inference that Maggard was the servant of Transporters rather than an independent contractor. *Eagle Motor Lines, Inc. v. Galloway* (1981), Ind.App., 426 N.E.2d 1322, 1325. Among the indicia of a master-servant relationship are the right to discharge, method of payment, supplying of tools by employer, belief by the parties in the existence of a master-servant relationship, control over the means used or result reached, length of employment and the establishing of work boundaries. *Gibbs, supra,* 283 N.E.2d at 595.

■ The determination of whether one acts as an independent contractor rather than a servant is usually a question of fact. *Trinity, supra,* at 1104.[5] An employer/employee relationship may be found although the parties define their relationship as that of principal/independent contractor where sufficient indicia of a master/servant relationship exists. *Stone, supra,* at 945. Moreover, whether a particu-

5. *See Bates Motor Transport Lines v. Mayer* (1938), 213 Ind. 664, 14 N.E.2d 91 (truck driver who transported exclusively freight furnished by corporation subject to direction and control of corporation which furnished permit and necessary supplies and maintained office and equipment was not an "independent contractor"); *Universal Carloading & Distributing Co. v.* *McCall* (1940), 107 Ind.App. 479, 25 N.E.2d 253 (truck driver paid a fixed rate for delivery to destinations as directed by company was not an "independent contractor"); *Gas City Transfer Co. v. Miller* (1939), 107 Ind.App. 210, 21 N.E.2d 428 (truck driver was not an "independent contractor" where he hauled freight supplied by the company in the company's leased equipment).

lar action of a servant is within the scope of his employment is a question of fact to be determined in light of the facts and circumstances peculiar to each case. *Trinity, supra,* at 1102.[6]

Our examination of the evidence most favorable to plaintiffs discloses the following indicia of an employment relationship between Transporters and Maggard, notwithstanding the existence of "independent contractor agreements." [Maggard testified that he signed (unexplained) "independent contractor agreements" drafted by Transporters in order to receive keys and money.[7] He "signed it and went" to "make sure that I would get it there." Record, p. 768.]

The parties operated under the assumption that a driver could be readily discharged. Maggard expressed his "clear" understanding that a driver failing to make a timely delivery "would not work for . . . Transporters anymore." Record, p. 819. A driver who failed to follow instructions or who refused a return delivery (if offered) "wouldn't have another job after that day." Record, p. 870.

Transporters offered its customers immediate driver response to a delivery order (in contrast to the 3 to 12 hour response time generally available in the industry) and maintained a pool of waiting drivers at the Nappanee terminal. "Same day" service was provided upon request. Record, pp. 1040–41. Drivers were routinely assigned a specific delivery deadline. *Within these parameters,* a driver could proceed at his own pace.

The employment arrangements anticipated an ongoing relationship between Transporters and a driver. A driver was required to complete an application form and provide pertinent information for submission to Transporters' insurer. An "approved" driver was typically assigned a series of deliveries. A portion of each pay-

ment due a driver was deducted by Transporters, until an escrow account of $500.00—to cover damages to a vehicle in transit, replacement keys or replacement locks—was accumulated. Maggard had completed 10–12 deliveries prior to the accident and had accumulated an escrow account of slightly less than $500.00. Record, pp. 712, 752.

The payment schedule was based upon a "Household Movers Guide" route and a driver was not compensated for any deviation from that route. Drivers were instructed to check a vehicle's fluid levels at each 150 mile interval, wash the vehicle prior to delivery, deliver a vehicle with an "above empty" fuel level, present the vehicle for customer inspection and obtain customer signatures upon acceptance. Drivers were prohibited from using any facilities in a delivered vehicle (e.g., a sink in a motor home) and from offering rides to hitchhikers.

Transporters maintained a 24 hour, 7 day dispatch service. Drivers were instructed to call the on-duty dispatcher or manager upon encountering any problem or upon the completion of a routine delivery. Transporters supplied the vehicles for delivery, a driver convenience center, a 24-hour telephone line, necessary permits and license plates, and an array of vehicle hitches.

In short, the means, method and timing of deliveries were supplied by Transporters; the driver need only supply his driving ability.

Plaintiffs presented substantial evidence to support the existence of an employment relationship between Transporters and Maggard. Moreover, the jury was properly permitted to consider whether, at the time of the accident, Maggard was engaged in the discharge of Transporters' business at Transporters' direction, although the first group of four vans had

---

6. In *Trinity, supra,* sufficient indicia of a master/servant relationship was present where: The driver delivered cookies at the invitation of a Church Guild member, the Guild provided the list of recipients, and the driver indicated a willingness to deliver according to instructions. The driver was acting within the scope of his employment while delivering cookies, inasmuch

as a cookie bake and delivery were the work of the Guild. *Id.* at 1102–3.

7. Upon execution of the "independent contractor agreements" for delivery of four vans to Piqua, Ohio, Maggard received $60.00 per van (for fuel and driver compensation).

been delivered. Where the evidence is such that the minds of reasonable persons *might* differ, a directed verdict is improper and the resolution of conflicting evidence is for the jury. *Eagle, supra,* at 1325. *See Roby v. Ziffrin Truck Lines* (1958), 128 Ind.App. 578, 148 N.E.2d 215 (issue of whether franchise owner was liable for negligence of driver operating his own equipment en route to pick up a load at dispatcher's direction should have been submitted to jury); *Watson, supra* (jury question presented as to whether owner/driver involved in accident en route to terminal was acting under the direction and control of company where the driver was instructed by dispatcher to bring in truck for inspection and deliver a load *if* the truck passed inspection). Here, evidence disclosed that, at the time of the accident, Maggard was en route to the Nappanee dispatch office with keys and bills of lading (to which the requisite customer signatures had not yet been affixed) in anticipation of delivering a second set of four vans.

Transporters' motion for judgment on the evidence was properly denied.

Affirmed.

RATLIFF, C.J., and HOFFMAN, J., concur.