# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**RYAN K. JOHNSON**
**RANDALL L. JUERGENSEN**
Keller & Keller, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:
Attorneys for Seven Corners, Inc.

**RICHARD R. SKILES**
**JANET M. PRATHER**
Skiles DeTrude
Indianapolis, Indiana

**FILED**
Jul 25 2014, 9:28 am

**CLERK**
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PHYLLIS DODSON, as Special Administrator of the Estate of EBONI DODSON, Deceased, | ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 49A04-1305-CT-267 |
| CURT D. CARLSON, CARMEL HOTEL COMPANY, d/b/a GRILLE 39, SEVEN CORNERS, INC., and CARMEL HOTEL, d/b/a RENAISSANCE HOTEL, | ) ) ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1009-CT-41815

**July 25, 2014**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

On February 22, 2010, Curt Carlson was driving home from a business meeting over dinner and drinks at the Renaissance Hotel in Carmel, Indiana. He struck a disabled vehicle on the side of I-465 and its driver, Eboni Dodson, was killed. Dodson's estate (hereinafter "Dodson") sued Carlson's employer, Seven Corners, Inc., and others. The trial court granted summary judgment for Seven Corners[1] on the ground there was no issue of fact as to whether Carlson was acting in the scope of his employment when he hit Dodson's car. We affirm.[2]

## FACTS AND PROCEDURAL HISTORY[3]

Carlson's meeting began at approximately 5:15 p.m. at the hotel bar. Carlson and his employer, Jim Krampen, typically conducted business meetings at the hotel, and there were other occasions when meetings involved dinner and drinks. Carlson had four beers while discussing business with Krampen, who owned Seven Corners, and a client. Carlson was not "required" as a part of his employment to be at the business meeting, but this was a "natural part of [his] employment." (Appellant's App. at 37.) The meeting carried over into dinner, at which Carlson had two glasses of wine. Carlson was made "point man on [the] business deal." (*Id.* at 44). Krampen bought the alcohol. Carlson

---

[1] Carlson and the hotel are also named defendants, but the summary judgment now being appealed addressed only Seven Corners.

[2] As we affirm summary judgment for Seven Corners, we do not address whether Dodson was entitled to punitive damages.

[3] We heard oral argument on June 19, 2014, at Trine University, Angola Indiana, before participants in Hoosier Boys State. We thank Hoosier Boys State and Trine University for their hospitality, and commend counsel on the quality of their oral advocacy.

left the hotel to drive home and the accident occurred a few minutes later. Carlson was arrested on suspicion of operating a vehicle while intoxicated after he registered .12 on an alcohol breath test machine.

Dodson brought a wrongful death and negligence action against Carlson, the hotel, and Seven Corners. Dodson alleged Seven Corners was liable for Carlson's actions under a theory of *respondeat superior*. The trial court entered summary judgment for Seven Corners, noting "It is assumed from the case citations of the parties that Indiana case law has not addressed a circumstance involving an employee consuming alcohol within the course of scope of [sic] employment, and then immediately engaging in a non-employment related activity, such as driving home." (*Id*. at 12–13.)

## DISCUSSION AND DECISION

If pleadings, depositions, answers to interrogatories, admissions on file, and testimony show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, a motion for summary judgment will be granted. *Bell v. Northside Fin. Corp.*, 452 N.E.2d 951, 953 (Ind. 1983). The motion should be resolved in favor of the party opposing it if there is any doubt as to the existence of a material factual issue. *Id.* The contents of all pleadings, affidavits, and testimony are liberally construed in the light most favorable to the non-moving party. *Id.* Summary judgment is not an appropriate vehicle for the resolution of questions of credibility or weight of the evidence, nor is it appropriate when conflicting inferences may be drawn from undisputed facts. *Id.*

3

The standard by which we review a summary judgment is well-established. While the party losing in the trial court must persuade us the decision was erroneous, we face the same issues as did the trial court and analyze them in the same way. *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind. 1996). We carefully scrutinize a summary judgment to assure the losing party is not improperly prevented from having its day in court. *Id.*

An employer may have vicarious liability under the doctrine of *respondeat superior* when an employee inflicts harm while acting within the scope of the employment. *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). To be within the scope of employment, "the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Id.* The facts need not show that the acts of the employee were motivated solely or predominately by the desire to serve the employer; an employee may be within the scope of his employment where his conduct "is motivated to any appreciable extent by the purpose to serve the [employer]." *Gibbs v. Miller*, 152 Ind. App. 326, 330, 283 N.E.2d 592, 595 (1972).

Carlson was not acting in the scope of his employment at the time of the accident. The doctrine of *respondeat superior* is limited by the "going and coming" rule: "an employee on his way to work is normally not in the employment of the corporation." *Biel, Inc. v. Kirsch*, 240 Ind. 69, 161 N.E.2d 617, 618 (1959). In *Biel,* Ethel Biel was president of Biel, Inc. She was in the habit of taking an automobile belonging to the corporation home at night and driving it back to work each morning. One morning as she

was returning to work she hit a motorcyclist. The action was dismissed as to Ethel Biel and maintained only against Biel, Inc.

> Our Supreme Court said:
>
> An essential part of the proof necessary to hold the appellant corporation liable was that Ethel H. Biel, *at the time and place of the accident*, was the appellant's corporate agent, acting within the scope of her employment and authority for and on behalf of the corporation as her principal; otherwise no negligence may be imputed to the appellant corporation.

*Id*. at 70, 161 N.E.2d at 618 (emphasis added). Relying on the emphasized passage above, Seven Corners asserts it is "uncontroverted that Carlson was entirely on personal time when the accident occurred." (Br. of Appellee, Seven Corners, Inc. at 5.)

Seven Corners also points to *Dillman v. Great Dane Trailers, Inc*., 649 N.E.2d 665, 668 (Ind. Ct. App. 1995), where we affirmed summary judgment for the employer. The employee, Welliever, was driving to a Great Dane sports banquet. He was Great Dane's Employee Relations Supervisor, and his job was to coordinate and be present at such functions. Welliever was to be the master of ceremonies. He was subject to disciplinary action if he did not attend any social activity. We determined Welliever was driving to work when the accident occurred and not acting in the scope of his employment. *Id*.

Whether an employee was acting within the scope of his employment is a question of fact for the jury only if there are conflicting facts, or conflicting inferences to be drawn from the facts, regarding why the motorist was on the road at the time of the accident. *Id*. at 668. The trial court noted the decisions on which Dillman relied:

5

all involve a mixed trip or a mixed activity where part of the trip may be said to serve the employee and part of the purpose of the trip may have been said to have furthered the interest of the employer. In those cases of mixed elements clearly the case should go to the jury because of the question of fact considering the purpose of the trip and whether or not the employee was acting within the scope of his employment at the time. Here, there was nothing about the furthering of Great Dane's interest that required Welliever to make this trip other than the normal and usual going to work.

*Id*.

Dillman also argued the use of the word "normally" in *Biel* suggested that whether an employee is acting within the scope of his employment when travelling to work is a question of fact. We disagreed:

The use of the qualifying word "normally" merely allows for an exception to the general rule for those instances where the employee is not just going to work, but also performing an errand for or otherwise providing some service or benefit to the company, *other than merely showing up for work.*

*Id*. (emphasis in original.)

That Carlson's drinking before he drove home might have been in some way work-related does not render inapplicable the "going and coming" rule. In *Cunningham v. Petrilla*, 817 N.Y.S.2d 468, 469 (App. Div. 2006), the court noted the general rule that an employee driving to and from work is not acting in the scope of his employment. Cunningham was completing his construction shift on a highway when he was struck by a car Petrilla was driving home from her employment at a bar. Cunningham pointed to evidence the bar encouraged its employees to drink alcohol with customers to help "promote social good will and business for the bar," *id*., and he argued it was foreseeable that an employee might become impaired in her ability to safely operate her automobile

6

on leaving the bar.

The court noted Petrilla was not acting in furtherance of any duty she owed the bar, nor did the bar exercise any control over her activities. *Id*. "Even assuming, *arguendo*, that the Pub encouraged the consumption of alcohol by its employees, we conclude that Petrilla was on a strictly personal venture and thus as a matter of law was not acting within the scope of her employment at the time of the accident." *Id*.

In *Bell v. Hurstell*, 743 So.2d 720, 721 (La. Ct. App. 1999), *writ denied*, 748 So.2d 1165 (La. 1999), Hurstell was involved with tour groups and events. She did networking after hours in furtherance of her employer's objectives. At the end of one business day she met at her office with Andrew Messina, with whom Hurstell's employer had a business relationship. After the meeting was concluded, Messina drove Hurstell to a lounge where she consumed alcohol Messina bought her. He then drove her to a party given by another company with which Hurstell's employer had a business relationship. There she had one or more drinks. At approximately 11:00 p.m., Hurstell decided to go home. As she was driving home she collided with the Bells' parked car.

The Bells argued Hurstell's intoxication occurred in the course and scope of her employment. The court said:

> According to this theory, any damages to which this intoxication could have a causal relationship could be said to arise in the course and scope of her employment, in spite of the fact that Hurstell was no longer acting in the course and scope of her employment at the time she caused the damage.

*Id*. The court noted there was no evidence Hurstell was forced to consume alcohol by her employer, either by means of physical threats or by threats of demotion or loss of

7

employment.    Nothing prevented Hurstell from ordering non-alcoholic beverages. Hurstell's employer did not furnish or serve the alcohol:

> We can see no public policy in holding an employer liable for damage caused by an employee on the way home from work just because that employee may have consumed alcohol as a matter of personal choice while entertaining clients off premises after hours. . . .   In other words, the consumption of alcohol does not expand the definition of course and scope of employment.  To put it another way, an accident that would not normally be considered as occurring during the course and scope of employment, will not be considered as occurring during the course and scope of employment merely because alcohol, which may have contributed to the accident, was consumed (but not required to be consumed as a condition of employment) while the employee-tortfeasor was acting in the course and scope of employment.

*Id*. at 721-22.

We acknowledge Indiana decisions to which Dodson directs us that have found an employee may be acting in the scope of his or her employment while driving.  In *Gibbs v. Miller*, Gibbs, a commission salesman, was not scheduled to work in the store but he had made several appointments to see prospective customers.   One involved a sale from which Gibbs received a commission.   He received a mileage reimbursement.   While enroute to his home for lunch Gibbs hit a car driven by Miller.

Gibbs was within the scope of his employment:

> Gibbs was engaged in a task incidental to his everyday employment, that is, calling on a prospective customer.   In fact the sale was completed and Gibbs received the commission therefrom.   At the time of the accident Gibbs was returning from this appointment.  He was carrying samples and supplies furnished by Sears and had the sales contract in his possession.  He had other appointments scheduled later in the day, and he telephoned Sears immediately after the collision to cancel these appointments.  He was within Sears' area of distribution and was exercising the discretion allowed him by Sears in choosing the routes to take and times for scheduling his

appointments. He testified that he often did paper work at home. He also testified that he was reimbursed for his mileage both to and from Elkhart.

152 Ind. App. at 330-31, 283 N.E.2d at 595.

*Gibbs* is distinguishable, as there is no evidence in the case before us that Dodson was, at the time of the accident, in any way "engaged in a task incidental to his everyday employment." *Id*. Rather, he had completed all tasks incidental to his employment and was going home. Nor do we find controlling decisions such as *Gullett by Gullett v. Smith*, 637 N.E.2d 172, 175 (Ind. Ct. App. 1994), *trans. denied*, and *State v. Gibbs*, 166 Ind. App. 387, 392, 336 N.E.2d 703, 705 (1975), where the employees were on call twenty-four hours per day and using employer-provided vehicles. In such cases, "the trier of fact could find or infer that it was essential that [the employee] have the use of the car since his duties entailed considerable driving and he was on call 24 hours a day." *Id*. at 391-92, 336 N.E.2d at 705.

As there was no designated evidence that would suggest Carlson was outside the "going and coming" rule, the trial court properly entered summary judgment for Seven Corners, and we accordingly affirm.

Affirmed.

BAKER, .J., and BRADFORD, J., concur.