**James R. STONE and Myra E. Stone, Plaintiffs-Appellants,**

v.

**PINKERTON FARMS, INC., Defendant-Appellee.**

**No. 83-3087.**

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1984.

Decided Aug. 6, 1984.

Rehearing Denied Dec. 4, 1984.

Michael S. Miller, Mendelson, Kennedy, Miller, Muller & Hall, Indianapolis, Ind., for plaintiffs-appellants.

William P. Wooden, Wooden, McLaughlin & Sterner, Indianapolis, Ind., for defendant-appellee.

Before FLAUM, Circuit Judge, PELL, Senior Circuit Judge, and KELLAM, Senior District Judge.*

FLAUM, Circuit Judge.

Plaintiffs-appellants, James R. Stone and Myra E. Stone, appeal from the grant of summary judgment in favor of the defendant, Pinkerton Farms, Inc. For the following reasons, we affirm the grant of summary judgment.

I.

This diversity action arises from a trucking accident in which Michael Leist, driving his tractor and trailer, rear-ended a tractor and trailer being driven by James Stone. Both trucks were proceeding in the same direction on the highway. Stone was traveling at 50–55 miles per hour; Leist obviously was driving at a quicker pace. Stone was, and still remains, severely impaired due to the injuries sustained during the impact.

Leist, at the time of the accident, was driving his own tractor and trailer. He was hauling soybeans for Pinkerton Farms (hereinafter "PFI"), from PFI's grain elevator to Central Soya in Indianapolis. The

---

* The Honorable Richard B. Kellam, Senior District Judge for the Eastern District of Virginia, is sitting by designation.

status of Leist in relationship to PFI is the issue presented for review in this case. The Stones assert that Leist was an employee of PFI and that the accident occurred during the course of his employment thereby making PFI liable for Stone's negligently inflicted injuries. In the alternative, assuming Leist was only an independent contractor, the Stones assert that PFI is liable to them for employing an incompetent driver. PFI asserts that Leist was an independent contractor and that they exercised due care in hiring him.

The Stones brought suit against Leist, Leist's father, and, subsequently, amended the complaint to include PFI as a defendant. Leist's father was dismissed as a defendant. Leist thereafter filed for bankruptcy and all claims against him were discharged. PFI moved for summary judgment on both theories of liability. The district court granted the defendant's motion for summary judgment. Plaintiffs appeal.

## II.

In reviewing a grant of summary judgment, this court must determine, in viewing the reasonable inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, whether "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure; *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). In reviewing the grant of summary judgment in favor of PFI, we will raise facts as relevant to the discussion of the applicable Indiana law.

### A.

■ The test for determining whether a master-servant relationship, or, more appropriately, an employer-employee relationship, exists is whether the alleged employer has the right to control the conduct of the alleged employee "at the time the negligent act occurred." *Gibbs v. Miller*, 152 Ind. App. 326, 283 N.E.2d 592, 595 (1972). The "right to control" refers to the *right* and

not to actual exercise of control in any particular circumstance. *Id.* 283 N.E.2d at 595. Indiana courts look to the following several factors in determining whether the employer has the right to control thereby making a person an employee: (1) right to discharge; (2) mode of payment; (3) supplying of tools by the employer; (4) belief by the parties in the existence of a master-servant relationship; (5) control over the means used or result reached; (6) length of employment; and (7) establishing of work boundaries. *Id.* at 595. We will consider these factors in relation to the circumstances presented in this case.

The parties, in essence, do not disagree on the relevant facts, but do disagree as to the inferences to be drawn from those facts. We look to those facts drawing reasonable inferences in the light most favorable to the Stones.

■ Due to the nature of the work, it is difficult to determine whether PFI had the right to discharge Leist, or whether it merely had the right to refuse to contract with Leist further (see plaintiffs-appellants' brief pp. 16–17). Each haul appears to be arranged on a day-to-day basis, with PFI calling Leist to haul whenever it needed a driver. It is clear that PFI could have refused to allow Leist to haul further loads. Furthermore, Leist could refuse to haul for PFI on any given occasion and he did, at times, refuse. PFI returned to him as a driver even after these refusals. PFI certainly could not stop or "discharge" Leist in the middle of a haul once Leist left the loading area and this fact leads to no inference for either party. The right to terminate a contract or discharge Leist in the middle of a haul would be the same no matter what the parties' actual relationship was. The fact that either party could contract or refuse to contract leads, however, to the conclusion that Leist was an independent contractor.

In looking at the method of payment, plaintiffs assert that Leist was paid in the same manner as PFI's other drivers: on the basis of the number of bushels (or pounds of livestock) actually delivered.

The affidavit of James O. Pinkerton indicates that the PFI employee-drivers were paid only twenty-five percent (25%) of the same rate as Leist. The two other PFI drivers were on the PFI payroll all year; Leist was not on the PFI payroll. Leist and the drivers were paid at different times; Leist billed PFI and the other drivers merely submitted slips indicating where they had been and what their mileage was and automatically received payments (Pinkerton deposition pp. 40–41). PFI did not deduct federal or state taxes or F.I.C.A. payments from Leist's pay checks whereas PFI did withhold such payments from the other two drivers (first Pinkerton affidavit; Pinkerton deposition p. 29). PFI paid for workmen's compensation insurance for the two PFI drivers and not for Leist (Pinkerton deposition p. 20; first Pinkerton affidavit). Leist was required to pay for the PFI fuel he used when driving his own equipment and payment for fuel was sometimes deducted from his pay check; the two PFI drivers were not required to pay for their own fuel (first Pinkerton affidavit; Pinkerton deposition p. 29). Although Leist and the drivers were paid loosely according to the same rate schedule, it is clear that the differences in method of payment are indicative of the fact that Leist was an independent contractor.

■ Plaintiffs assert that the fact that Leist's rate of compensation was set by PFI rather than through negotiation supports the inference that Leist was an employee rather than an independent contractor. We disagree. This fact is indicative of the unequal bargaining power between the two parties. Leist was an independent trucker who did not have enough bargaining power after several months of hauling for PFI to set his own rates, such as a larger trucking firm might have. This factor is not dispositive of PFI's and Leist's relationship.

■ Leist owned his own tractor and trailer, which he was driving at the time of the accident. When driving for PFI, Leist did, at times, drive PFI equipment. His equipment was not designed to carry some of the products PFI wanted hauled, consequently, on certain occasions he used some or only PFI equipment. Whether or not a driver uses his own equipment may be relevant but is not dispositive of the question of employee status. *See Wilson v. Kauffman*, 156 Ind.App. 307, 296 N.E.2d 432 (1973); *Universal Carloading & Distributing Co., Inc. v. McCall*, 107 Ind.App. 479, 25 N.E.2d 253 (1940). In the instant case, however, Leist was driving his own equipment at the time of the accident. The fact that he could have been driving PFI equipment is of no consequence. In *Gibbs v. Miller*, 283 N.E.2d at 595, the court found that the existence of a master-servant relationship depends on the "... conduct of the alleged servant at the time the negligent act occurred." Leist was driving his own equipment at the time of the accident and this factor is preeminent in determining the existence or non-existence of an employer-employee relationship in the instant case. We conclude that the inference to be drawn from this fact is that Leist was an independent contractor.

■ The belief of the parties supports the conclusion that Leist was an independent contractor. While it is true that there was no formal written agreement between the parties, both PFI and Leist understood Leist to be an independent contractor. This is corroborated by the fact that Leist could refuse to haul any given load and, in fact, did refuse to haul on occasion. The existence of a principal-independent contractor relationship is also supported by the fact that PFI did not withhold taxes or pay for any of Leist's insurance. Leist did haul for others, and while it is true that he received most of his income from PFI, PFI did not preclude him from working for others. In *Wilson v. Kauffman*, 296 N.E.2d at 432, the court, in finding the existence of an employer-employee relationship, relied heavily on the fact that the drivers worked full-time for the company, the company paid the drivers' insurance premiums, and that the drivers could not work for other companies at the same time. These factors are not present in the instant case. Both

PFI and Leist considered their relationship to be that of two independently contracting parties. An employer-employee relationship may be found even though the parties define their relationship as one of principal-independent contractor if enough of the indicia of a master-servant relationship are present. *Wilson v. Kauffman.* Where, as here, the parties define their relationship as that of an independent contractor-principal, and the facts of their relationship support that conclusion, courts will not interfere with the intent of the parties.

The question of control over the work is not dispositive of the ultimate issue of whether Leist was an employee or an independent contractor. The control asserted by a principal is, in essence, the same as the control asserted by an employer when the work to be done is driving a truck from one place to another. An employer cannot discharge a driver feasibly while the driver is en route from one location to another; likewise a contract with an independent contractor cannot be broken en route without difficulty. The question of control over the work does not lead to an inference supporting either party. PFI would have the same amount of control over Leist whether he was an employee or an independent contractor.

■ The length of Leist's employment is also not dispositive of whether he was an employee. Leist began hauling for PFI at the end of May 1980. The accident between Stone and Leist occurred on November 6, 1980. The length of Leist's relationship with PFI does not lead to an inference supporting either party. Also a nondispositive factor, the establishment of work boundaries is not applicable to the instant set of facts.

The parties spend a significant portion of their briefs discussing the question of permits and who was required to obtain trucking permits from the Public Service Commission of Indiana or the Interstate Commerce Commission. PFI asserts that it was not required to obtain any such permits because it was exempt as a carrier of agricultural products. *See* 49 U.S.C. § 10526; Ind.Code § 8–2–7–3(g). Leist's lack of possession of permits is irrelevant to the determination of whether he was an employee of PFI. If he were an employee, and we find no facts from which to infer this conclusion, then he would not need a permit. The plaintiffs' reliance on the presumption of *Brandenburg v. Buchta,* 233 Ind. 221, 117 N.E.2d 643 (1954) concerning a driver's lack of permits is misplaced. In *Brandenburg,* the court found that because the principal did have the required permits and the driver did not, the presumption that flowed from the facts was that the driver was not violating the law and that he was driving under the principal's permits. The court concluded, therefore, that the driver was an employee of the principal. The other cases cited by plaintiff in support of the proposition that Leist is presumed to be an employee also involved principals who were required to have permits. *See Universal Carloading & Distributing Co., Inc.; Gas City Transfer Co. v. Miller,* 107 Ind.App. 210, 21 N.E.2d 428 (1939); *Bates Motor Transport Lines v. Mayer,* 213 Ind. 664, 14 N.E.2d 91 (1938). In the instant case, PFI was not required to have a permit, so the *Brandenburg* presumption does not flow from the facts. *Cf. B.A. Kipp Co. v. Waldon,* 117 Ind.App. 694, 75 N.E.2d 675 (1947). If Leist, however, as an independent contractor was required to have certain permits which he did not possess, this factor relates more to the second issue in the case, whether PFI hired an incompetent contractor (i.e., whether PFI had a duty to inquire into permits possessed by Leist). Leist's possession of permits or lack thereof is not dispositive of whether he was an employee of PFI.

We concur in the assessment of the district court that a separate contract governed each haul. The inferences to be drawn from the basically undisputed facts, even in viewing them in the light most favorable to the Stones, lead to only one conclusion: that Leist was an independent contractor. The district court's grant of summary judgment holding that Leist was

an independent contractor must be affirmed.

## B.

The district court properly granted summary judgment on the second of plaintiffs' allegations. Plaintiffs-appellants assert, in the alternative, that if Leist was an independent contractor then PFI was liable to the Stones for failing to exercise due care in hiring a competent contractor. The district court, in granting the summary judgment motion, found that the facts as presented did not constitute negligence on the part of PFI.

■■■■ The general rule in Indiana is that a principal is not liable for the torts of an independent contractor. *Cummings v. Hoosier Marine Properties, Inc.*, 173 Ind. App. 372, 363 N.E.2d 1266 (1977). There are several enunciated exceptions to this rule, however only one of those exceptions is relevant to the present case. A principal may be found liable for the torts of a hired independent contractor if the consequences of the negligent failure to select a competent contractor cause the harm upon which a suit is based. *Wabash County v. Pearson*, 120 Ind. 426, 429, 22 N.E. 134, 135 (1889). *See also Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005 (7th Cir.1982). Plaintiffs charge that Leist's six speeding tickets, his lack of insurance coverage, and his lack of a permit from either the Interstate Commerce Commission or the Public Service Commission of Indiana all are indications that Leist was an incompetent independent contractor.

■■■■ At the time it hired Leist, PFI inquired into his qualifications. Leist had a valid chauffeur's license and he received a good recommendation from his prior employer, Seabolt Trucking. Leist had driven for Seabolt without an incident, a fact communicated to PFI. PFI did not inquire as to whether Leist had any tickets. The district court found that this was not a breach of PFI's duty to exercise ordinary care. The recommendation of a prior employer was sufficient to satisfy the duty to exercise ordinary care. PFI breached no duty by failing to inquire as to any traffic tickets.

■■■■ We also concur in the conclusion of the district court that, as a matter of law, PFI did not breach its duty to exercise ordinary care in failing to ascertain whether Leist had any permits. Assuming that Leist was required to have some type of permit, PFI would not be liable for Leist's negligence solely on the basis that Leist lacked the permits required by law. *B.A. Kipp Co. v. Waldon* (even if principal was aware that independent contractor-trucker had no permits, not liable for injuries caused to third party; no causal connection between principal's actions and injury). In any event, it appears that Leist was exempt from the permit requirement because he carried agricultural products. *See* 49 U.S.C. 10526; Ind.Code § 8–2–7–3(g). PFI was not liable because Leist had no permits, nor did PFI have any duty to inquire whether Leist had any permits.

Leist's lack of liability insurance and PFI's responsibility therefor, is more difficult, especially in light of our hindsight knowledge that Leist did have a poor driving record. Leist's lack of insurance presents the question of whether PFI's duty to have a competent contractor extends to a duty to hire a financially responsible contractor. In other words, does the concept of competency include the capability to pay for one's incurred obligations. *See* Restatement Second of Torts § 411 comment g. The Restatement has declined to speak to this issue. We have found no Indiana case directly on point. Several other courts, however, have spoken on the question of the duty to hire a financially responsible independent contractor. A few courts have found no duty beyond that of ascertaining whether the independent contractor is competent to do that work for which he is hired. *Hampton v. McCord*, 141 Ga.App. 97, 232 S.E.2d 582 (1977); *Coleman v. Silverberg Plumbing Co.*, 263 Cal.App.2d 74, 69 Cal.Rptr. 158 (1968); *Matanuska Electric Association v. Johnson*, 386 P.2d 698 (Alaska 1963). One federal

court, sitting in diversity, concluded that New Jersey courts would find that the duty to hire a competent contractor would include the duty to hire a financially responsible contractor. *Becker v. Interstate Properties*, 569 F.2d 1203 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

Both the *Coleman* and *Matanuska* cases involve situations where employees of an independent contractor were injured on their respective jobs. The independent contractor failed to obtain the necessary workmen's compensation insurance thereby leaving the employees without compensation for their injuries. The injured employees then sued the principals for negligently failing to hire a financially responsible contractor. Both the California and Alaska courts refused to recognize this cause of action.

In *Becker,* an employee of an independent subcontractor was injured on the job by an employee of an under-insured sub-subcontractor. The employee sued the developer on the theory that the developer had breached its duty to ascertain whether its contractors and subcontractors were fully insured. The Third Circuit concluded, based on New Jersey policy considerations and language in a recent New Jersey Supreme Court decision, that New Jersey would recognize a cause of action based on the failure of a developer to hire a financially responsible contractor. The *Becker* case contained a strong dissent challenging that the majority unduly expanded New Jersey law by relying on dicta.

The *Hampton* case involved a factual situation similar to the one presented in the instant case. In that case a producer in the pulpwood industry was hauling logs to be delivered to a broker when he negligently collided with a motorcycle driver. The motorcyclist's family sued the truck driver and the broker. The Georgia Court of Appeals refused to find that the broker was liable for failing to hire a fully insured independent contractor. The court held that it "decline[d] to so extend the liability of a person engaging an independent contractor where, as here, the contractor's work does not take place in an inappropriate surrounding and does not ordinarily expose others to peril." *Hampton v. McCord,* 232 S.E.2d at 586.

■ We find no Indiana cases directly on point nor do we find any language in any Indiana cases even remotely suggesting that Indiana courts would expand the concept of independent contractor competency to include fiscal responsibility. That expansion of tort liability is best left to the Indiana legislature or the Indiana courts themselves. We conclude that we must analyze this case in a manner similar to the question of lack of permits discussed *supra.* The lack of liability insurance has no causal connection to Leist's negligence. *Cf. B.A. Kipp v. Waldon.* PFI adequately investigated Leist's competency to drive and his lack of liability insurance does not cause PFI to be liable for Leist's negligence.

Alternatively, it could be argued that once PFI knew that Leist had no insurance, it had a duty to inquire as to why he had none. That inquiry, in turn, could have uncovered the fact of Leist's driving violations. We cannot conclude that PFI's knowledge that Leist had no insurance created a duty on the part of PFI to inquire further as to why he had no insurance. Again, this is a matter more appropriately left to the Indiana legislature. The district court correctly granted summary judgment to PFI on the issue of hiring a competent independent contractor.

III.

The district court did not err in granting summary judgment on behalf of the defendant-appellee, PFI. We find there were no disputed issues of material fact. As a matter of law, PFI was not liable to Stone for Leist's negligence. Despite the tragic and devastating nature of Stone's injuries, and the unfortunate circumstances created by Leist's bankruptcy, the search for the "deep pocket" to compensate Stone cannot be extended to PFI. Accordingly, the judgment in favor of PFI is hereby affirmed.