In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1070

ESTATE OF ANTHONY J. SUSKOVICH,

*Plaintiff-Appellant,*

*v.*

ANTHEM HEALTH PLANS OF VIRGINIA, INC., ANTHEM
INSURANCE COMPANIES, INC., ANTHEM LIFE INSURANCE
COMPANY, HEALTH MANAGEMENT SYSTEMS, INC.,
ORIENTATION BENEFIT ADMINISTRATORS, INC.,
THE WELLPOINT COMPANIES, INC., WELLPOINT, INC.,
and its Pension and Welfare Benefits Plans, the Fiduciaries
and Administrators of the Plans, and TRASYS, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 06 CV 425—**Sarah Evans Barker**, *Judge.*

ARGUED DECEMBER 2, 2008—DECIDED JANUARY 22, 2009

Before CUDAHY, FLAUM, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Until his sudden death in 2006,
Anthony J. Suskovich worked as a computer programmer
for WellPoint, a health insurance company, and Trasys, an

information technology (IT) company. In exactly what capacity he worked for those two companies is the subject of this present case. Suskovich's estate claims that he was a regular employee, and worse, one that was not paid overtime or enrolled in benefits programs for which he was eligible, and who owes state and federal tax agencies various taxes that WellPoint and Trasys should have withheld. WellPoint and Trasys claim that Suskovich was an independent contractor, and thus ineligible for benefits or overtime, and that he owes back taxes because of his own failure to file proper tax returns or pay his withholding taxes. After the district court granted summary judgment to WellPoint and Trasys, the estate brought this appeal.

For the following reasons, we affirm the district court's grant of summary judgment.

## I. Background

Suskovich was a computer analyst and programmer who worked, at various points over ten years, with one of the defendants in this case, WellPoint/Anthem ("WellPoint"). WellPoint is a related group of companies that provide health care coverage to clients throughout the United States. In 1995, Suskovich formed his own Indiana corporation, Indy Imaging, Inc., which he listed on his resume as "Indy Imaging, Inc. d/b/a Anthony J. Suskovich." WellPoint retained Suskovich and other IT professionals to work on the company's IT team in 1996. While no record exists of any contractual agreement between Suskovich and WellPoint, Suskovich stated on a

form he used to access WellPoint's computer system that he was a "contractor," and he billed WellPoint for his time on an invoice form that he had created, stating that he was a "salesperson" who sold "computer consulting" to WellPoint. He was paid at an hourly rate of $60, resulting in an annualized salary of about $200,000, and received no benefits. For tax purposes, his salary was reported on a 1099 form rather than a W-2.

Suskovich was retained for limited durations, usually about six months, although these limited engagements were often rolled over into new engagements. WellPoint stopped retaining Suskovich in 1999, but because of his expertise with various IT issues, sought to bring him back in 2000. Due to the company's new vendor consolidation program, Suskovich could only be retained if his services were offered through a preferred vendor. At this point, Suskovich began his relationship with the other defendant in the present case, Trasys, Inc., which agreed to bring Suskovich on as part of their team of IT professionals working with WellPoint. He was compensated for his time by submitting invoices to WellPoint, which would then approve them and return them to Trasys, which in turn paid Suskovich. Again, for tax purposes, Trasys issued Suskovich a 1099 form rather than a W-2. The 1099 forms that WellPoint and Trasys issued Suskovich listed his income as "nonemployee income" or "other income."

In February 2001, Suskovich signed an "Independent Contractor Agreement" with Trasys; this was apparently the first time that Suskovich and Trasys had put

Suskovich's relationship to the company in contractual form. Trasys labeled the writing as an independent contractor agreement, but the form contained terms that could refer to both an employment relationship and an independent contractor relationship; for instance, it referred to "wages" and consideration for "employment," but was also an agreement that only extended for a temporary period of time, and that began with the words "Trasys offers to contract you. . . ." As before, Suskovich would have to submit his hours to WellPoint and have them approved before he could receive any compensation from Trasys. Suskovich was paid $62 an hour under the agreement, and received no other benefits.

Throughout his time with WellPoint and Trasys, Suskovich worked on a variety of projects, and occasionally worked on different projects for different divisions of WellPoint at the same time. For instance, in 2001 Suskovich was working on mainframe issues for WellPoint's Federal Employee Program while simultaneously working on a print-mail project for a different division. In 2005, Suskovich entered into an agreement with Anthem Health Plans of Virginia to work on a Medicaid subrogation project; Suskovich did not go through Trasys when arranging this work, but rather drafted and submitted an "Agreement for Consulting Services with WellPoint Virginia" in which he described himself as an independent contractor and that nothing in the contract should be construed as creating an employer-employee relationship. Under the terms of the agreement, Suskovich was responsible for all income tax, unemployment insurance, and withholding. Anthem Health Plans of Virginia

issued Suskovich a 1099 form rather than a W-2, and the other divisions of WellPoint and Trasys were apparently unaware of this additional work.

During his time with WellPoint, Suskovich worked in a cubicle at WellPoint, with a computer supplied to him by the company. He apparently did not have a direct supervisor and worked under the WellPoint employee who was supervising whatever project he was working on. He occasionally worked offsite, but was expected to work at WellPoint's offices and to answer to the supervisors on his projects.

Sometime in August 2005, WellPoint informed Suskovich that they would not be keeping him on past the end of the year; in mid-September, they declined to renew his contract through Trasys. WellPoint was attempting to train one of their in-house programmers in the work that Suskovich was doing for them, but when getting her an outside training program proved to be too difficult, WellPoint asked Suskovich to train her. Suskovich began looking for additional work at this time, and WellPoint was disappointed with his efforts in training the in-house employee and attending his project meetings. WellPoint told Trasys that they would replace Suskovich with someone from another vendor if he did not improve his performance, and Trasys then told WellPoint that Suskovich's performance would improve.

Suskovich continued to look for other work, and approached Tom Eberhard, who had previously an independent contractor with WellPoint but who had accepted an offer of employment from the company and

had risen to a managerial role over some of the projects Suskovich worked on. Eberhard, along with another former IT contractor, Bruce Jeschke, who had also become a full-time employee of WellPoint, had made various attempts over the years to coax Suskovich into working for the company directly. In late 2005, Suskovich asked Eberhard if he had any work for him. Eberhard told him that he had no need for any contract work but did discuss the possibility of full-time employment with WellPoint. Suskovich's initial salary demand was apparently too high, however. Before Eberhard had a chance to negotiate, Suskovich contracted pneumonia and passed away suddenly.

Before his death on January 1, 2006, the IRS was investigating Suskovich because of his failure to file tax returns for several years. In response Suskovich filed delinquent tax returns for 1999-2002, and tax returns for the 2003 and 2004 tax years. On those returns, he listed himself as a self-employed computer consultant, and claimed that he derived his income from his computer consulting business. He also claimed substantial business deductions, again related to his computer consulting business. After the investigation, Suskovich agreed to a monthly levy on his income from the IRS, although at the time of his death he had not paid the full amount of his back taxes, including $100,000 in tax debt to the IRS and approximately $33,000 in tax debt to the state of Indiana.

Suskovich's wife sought relief from this outstanding debt as an innocent spouse, but the IRS denied her request. In March 2006, Kathy Suskovich, as the personal represen-

tative of Suskovich's estate, filed the present lawsuit. The estate initially sought declaratory relief in the form of a judgment that Suskovich was an employee of WellPoint and then a joint employee of Trasys and WellPoint. On the basis of that determination, the suit also sought a monetary award for compensation that Suskovich was supposedly denied under the Fair Labor Standards Act and other benefits that Suskovich was denied under the Employee Retirement Income Security Act, as well as indemnification for Suskovich's tax liabilities. The estate moved for summary judgment on April 6, 2007, and WellPoint and Trasys likewise moved for summary judgment on all counts. In December 2007, the district court denied the estate's motion for summary judgment and granted summary judgment to WellPoint and Trasys, finding that Suskovich was an independent contractor rather than an employee. This appeal followed.

## II. Discussion

The estate's appeal raises three issues. First, the estate claims that the district court mistakenly found that the deciding factor with respect to Suskovich's employment status was the contractual relationship between the parties; second, that the district court wrongly found that the factors in the control test overwhelmingly favored the appellees; third, that the district court considered hearsay testimony that should have been barred by the Dead Man's Statute. WellPoint and Trasys raise an additional issue, arguing that they can prevail on alternative grounds for the ERISA, FLSA and indemnifica-

tion claims even if this court decides the employment question against them.

We review a district court's grant of summary judgment de novo, reviewing the facts in the light most favorable to the non-moving party. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the district court applied the proper standard to the employment inquiry in this case, this court reviews its findings only for clear error. *Ost v. West Suburban Travelers Limousine Co.*, 88 F.3d 435, 438 (7th Cir. 1996).

## A. Whether the district court incorrectly found the employment contracts between the parties as determinative of Suskovich's employment status.

The estate first argues that the district court improperly found the employment contracts between Suskovich and Trasys and WellPoint Virginia to be determinative of his employment status. The estate argues that the district court afforded improper weight to this factor, ignored contradictory evidence in the employment contracts, and ignored the other factual considerations in the control test. More specifically, the estate argues that the district court misapplied this circuit's decision in *Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941 (1984), which gives parties to a contract the freedom to define their relationship as one of principal and independent contractor only if other

factors do not support a finding of an employer-employee relationship. *Id.* at 945 ("An employer-employee relationship may be found even though the parties define their relationship as one of principal-independent contractor if enough of the indicia of a master-servant relationship are present. . . . Where, as here, the parties define their relationship as that of an independent contractor-principal, and the facts of their relationship support that conclusion, courts will not interfere with the intent of the parties.").

Trasys responds that this argument either misreads or misinterprets the district court's opinion, which found the contractual definition of the relationship to be a "primary" factor in the analysis, but still examined whether the traditional control test provided sufficient indicia of an employment relationship. This indeed seems to be what the district court did. The district court stated that it placed "primary emphasis" on the intent of the parties when determining the nature of the relationship, but then conducted an analysis of the ten-factor control test from the Restatement (Second) of Agency, and adopted by the Indiana Supreme Court in *Moberly v. Day*, 757 N.E.2d 1007 (Ind. 2001). The district court acknowledged that it attached particular importance to the ninth factor of the control test, the belief of the parties concerning a master/servant relationship. That approach fits with the logic of *Stone*, however, since the district court was attempting to follow the intent of the parties as expressed in the contractual agreements unless enough facts indicated the existence of a traditional employment relationship. In part, this approach recognizes that the Restate-

ment test was not designed solely as a test of employment status; it is also frequently used in tort cases to determine whether an employer is liable for an injury to a third party. *See* Restatement (Second) of Agency § 220.1 cmt. c. Since the Restatement test is a multi-factor balancing test, courts applying the test in an employment suit, cognizant of the freedom given to parties to create their relationship through contract, may choose to emphasize evidence that is especially probative of the parties' beliefs about the nature of the relationship. Such probative evidence would include evidence of an explicit contractual definition of that relationship or evidence of the tax status of the relationship.

The estate also argues that the district court overlooked contradictory evidence, since the Independent Contractor Agreement between Trasys and Suskovich contained references to both an independent contractor relationship and an employer-employee relationship. And because Trasys drafted the contract, the estate argues that contract law requires that any ambiguity be construed against the drafter. *United Thermal Indus., Inc. v. Asbestos Training & Employment, Inc.*, 920 F.2d 1345, 1349 (7th Cir. 1990). However, *United Thermal* also holds that extrinsic evidence of the intent of the parties can be admitted where the terms of the contract are unclear or ambiguous, and Indiana cases holding that ambiguities should be construed against the drafter also hold that extrinsic evidence of the parties' intent is admissible in order to resolve ambiguities. *See Rieth-Riley Const. Co., Inc. v. Auto-Owners Mut. Ins. Co.* 408 N.E.2d 640, 645 (Ind. App. 1980). In determining the intent of the parties, the district court

considered evidence from inside and outside of the contract. The district court first found that the contracts' terms were inconsistent with an employer-employee relationship despite the use of phrases like "employee" and "wages" because the contract made any "employment" subject to the approval of WellPoint, which is an odd term indeed for an employment contract. Second, the district court credited the evidence that the purpose of the contract with Trasys was to allow Suskovich to continue working on WellPoint projects after the company had established its preferred vendor system. Outside of the citation to *United Thermal*, the estate does not challenge the district court's summary judgment findings resolving the ambiguity in the contract, and we accordingly find that the district court was correct in considering the contract in its summary judgment ruling.

**B. Whether the district court improperly determined that Suskovich was an independent contractor based on the control test.**

The estate next argues that the district court improperly determined the ten-factor control test from the Restatement (Second) of Agency in favor of WellPoint and Trasys despite several factors that the estate argues are ambiguous or tilt in favor of finding a traditional employer-employee relationship. The issue of the control test raises the preliminary question of exactly what standard this court should apply when determining whether or not Suskovich was an employee or an independent contractor, given that the estate makes common

law, FLSA, and ERISA claims, and there are slightly different tests for each of those claims. ERISA cases use a 12-factor common law standard to determine if a party to a lawsuit was an employee under the act. The Supreme Court has held that this standard is similar to the 10-factor Restatement test. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992). FLSA cases, meanwhile, are decided utilizing a broader definition of employee than the common law, and determine whether an arrangement is an employment or independent contractor relationship with a six-factor test to determine the "economic reality" of the situation. *Secretary of Labor, U.S. Dept. of Labor v. Lauritzen*, 850 F.2d 1529, 1534 (7th Cir. 1987). The district court followed the Restatement test, an approach that we will follow as well.[1] Given that the majority of the claims in this case revolve around the bare question of employment status and the Restatement test is generally equivalent to the common law test from *Darden*, that test provides the best means of resolving the main employment question before us.

Under the Restatement test, a court examines: (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under

---

[1] Additionally, the estate invokes the Restatement test in its arguments and briefs and thus has waived any argument that the broader FLSA standard ought to apply to this case.

the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relation of master and servant; (10) whether the principal is or is not in business. *Moberly*, 757 N.E.2d at 1010; *see also* Restatement (Second) of Agency § 220.

## 1. Extent of control

The district court's summary judgment opinion found that the control factor supported WellPoint and Trasys' claim that Suskovich was an independent contractor rather than an employee. The estate challenges this finding on appeal, citing WellPoint and Trasys' control over important aspects of Suskovich's work. Specifically, the estate cites the fact that WellPoint and Trasys mandated that he work from at least 8:30 a.m. to 4:00 p.m., controlled the number of hours he could bill in a given day, required that he attend project meetings, monitored his progress on projects and asked him to train a replacement. The estate also argues that WellPoint and Trasys "disciplined" Suskovich for tardiness and receiving personal telephone calls; presumably, the estate is referring to WellPoint's conversations about finding someone else for Suskovich's projects if his tardiness did not improve.

None of the facts that the estate sets forth are sufficient to establish WellPoint and Trasys' control over the details of Suskovich's work. Merely setting a work schedule is not sufficient to support a finding that a given person is an employee rather than an independent contractor. *Ost*, 88 F.3d at 438. Nor is the fact that a person is required to be at a given place at a given time or assigned project work sufficient to support an employer-employee relationship. *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487, 493 (7th Cir. 1996) (finding that setting "on call" hours and assigning patients was not sufficient to create an employment relationship between a doctor and a hospital). Rather, the question is whether the details of the work were in the control of Suskovich or WellPoint and Trasys. *See Ost*, 88 F.3d at 438-39. The record here seems to indicate that Suskovich controlled the details of his work, and that he was accountable to Trasys and WellPoint only for the results of his work. Indeed, as the district court pointed out, neither Trasys nor WellPoint had employees who could adequately supervise the computer programming work that Suskovich did, which was the reason the companies retained him in the first place.

The record bears this observation out as well; for instance, Aaron Longdon, a project leader in WellPoint's Federal Employees Program, averred that, "[Suskovich's] programming expertise and skill in computer programming languages such as Mercator were beyond FEP's level of technical knowledge. FEP exerted no control over the details by which Suskovich conducted his work." As a rebuttal to this argument, the estate points to com-

mentary in the Restatement that even skilled artisans can be considered employees. That is beside the point. Obviously, a company can control the work of even a very advanced computer programmer if there is evidence that the company controls how the programmer goes about the job and does not just examine the final result. The record in this case indicates that Suskovich was answerable only for his final performance on projects, and accordingly this factor favors the district court's summary judgment finding that Suskovich was an independent contractor.

### 2. Instrumentalities

The estate next argues that Suskovich was an employee rather than an independent contractor because WellPoint and Trasys supplied the instrumentalities of his work. Suskovich was required to do his work on site, and was given a desk, computer, filing cabinet, and other supplies. The estate argues that because these were instrumentalities of substantial value the district court should have drawn an inference of employment. WellPoint and Trasys respond that, since Suskovich was a computer programmer, it is hardly surprising that he would work on equipment provided by the company.

Courts that have been presented with this claim in the past seem to have decided that this factor is relatively unimportant. The Second Circuit, evaluating a similar employee versus independent contractor question, found that this factor favors an employment relationship should not weigh heavily in the analysis, since computer

programming work will always be done on a company's computers. *Aymes v. Bonelli*, 980 F.2d 857, 864 (2d Cir. 1992); *see also Bigalke v. Neenah Foundry, Co.*, No. 05-C-29, 2006 WL 1663717, at *5 (E.D. Wis. June 9, 2006) (finding that while this factor weighed in favor of the plaintiff, "the various trappings of employment she cites seem more superficial than substantive indicia of employment status.").

The district court made a similar determination when holding that this factor should not have much significance in the overall analysis. The estate objects to this part of the opinion, claiming that the district court is making a "custom argument" that is not supported by the record. That is incorrect, however, and ignores what other courts that have evaluated the same issue have previously held. An independent contractor working on a company's computer system will be using computer equipment supplied by that company—that is the logical result of hiring the consultant to do programming work on that system in the first place. One need not have any familiarity with the customs of IT work to draw this inference. So while we note that WellPoint and Trasys did indeed supply Suskovich with the instrumentalities of his work, we also recognize that such is the nature of IT work, and that this is not a factor that bears much weight in the overall analysis.

### 3. Length of employment

The estate next argues that the district court erroneously found that the length of Suskovich's employment sup-

ported independent contractor status. The district court concluded that this factor favored WellPoint and Trasys because Suskovich was only employed for the length of short term contracts, because his employment was not guaranteed, and because he worked for different divisions of the company and other companies during the time he worked for WellPoint. The estate now argues that the short term of the contracts is irrelevant, as is Suskovich's side work, citing *Lauritzen*, which held that persons retained for seasonal work could still be employees for purposes of the FLSA.

Trasys and WellPoint argue that Suskovich was only engaged for limited periods of time and that he went through occasional periods where his projects with Well-Point ended and he performed no work for the company. Thus, they conclude, the district court correctly found that this factor favored a finding that Suskovich was an independent contractor. This court has previously held that where a person is engaged to work for a company for a limited period of time with no expectation of contract renewal, that fact favors independent contractor status. *EEOC v. North Knox School Corp.*, 154 F.3d 744, 750-51 (7th Cir. 1998). Suskovich worked with WellPoint on and off for about ten years, five of those years through Trasys. While this is a substantial period of time, Suskovich was only engaged for short projects, usually lasting six to twelve months. The record shows that he never enjoyed any guarantees that his work would extend beyond this limited duration, and accordingly, as this court has held before, this factor favors independent contractor status.

Finally, the citation to *Lauritzen* is little help in this case. *Lauritzen* was decided under the FLSA which, as previously discussed, takes a broader view of employer-employee relationships than the common law or ERISA tests. It thus provides little support for the position that a person who was engaged for limited periods of time without an expectation of permanent employment can claim to be an employee under a traditional analysis.

### 4. Method of payment

The estate next argues that because Suskovich was paid by the hour, he was an employee rather than an independent contractor. It cites *Moberly*, and various commentary to the Restatement emphasizing that when a person is paid by the hour rather than by the job, such payment is evidence of a traditional employment relationship. Trasys and WellPoint, on the other hand, point out a number of cases from this court holding that tax forms and tax returns are essential when deciding which status this factor favors. *See Taylor v. ADS, Inc.*, 327 F.3d 579, 581 (7th Cir. 2003); *see also Mazzei v. Rock N Around Trucking, Inc.*, 246 F.3d 956, 964-65 (7th Cir. 2001). Most relevant to the present case, this court has previously held that issuing 1099 forms, which are used for non-employee compensation, "would be appropriate for independent contractor status." *North Knox School Corp.*, 154 F.3d at 750. In this case, Suskovich was issued 1099 forms from both WellPoint and Trasys, and the record shows that he was never added to WellPoint or Trasys' payroll. Instead, he had to invoice his hours in order to be paid. On his own tax

returns, Suskovich also listed his income as income from a sole proprietorship, and he claimed business deductions related to that proprietorship. The bare argument that Suskovich was paid by the hour and thus is classified by the Restatement commentary as an employee is simply inadequate; it would require this court to reverse its previous holdings about the significance of tax status, as well as Suskovich's own tax returns.

### 5. Part of the regular business

The estate next argues that the district court erroneously found that Suskovich's work was not part of the regular business of WellPoint or Trasys. The estate argues that Trasys provides IT professionals to various businesses, and so Suskovich's work was in line with their core business operation. It also argues that WellPoint's business of providing and administering health plans depends upon computers and computer networks and so Suskovich's work was part of their regular business.

The estate's last point proves too much; nearly every organization uses computers for its operations, and nearly every organization has some kind of network. If the estate is correct, this finding could support an employer-employee relationship between IT personnel and just about anyone. The argument is stronger with respect to Trasys, since it is a company that provides IT professionals to companies in need of assistance, and Suskovich was an IT professional working for WellPoint. The argument is ultimately superficial, however. The facts of this case indicate that Suskovich only operated through Trasys

because there were projects that WellPoint wanted him to work on but on which they could not retain him directly because of the preferred vendor agreement. As the district court also pointed out, Trasys made less than its usual profit margin on Suskovich's work. While Suskovich may have been engaged in the same fundamental operation as Trasys the facts of this case indicate that his work was not part of their regular business—that is, he was not hired or compensated in the regular way, and he was brought on as an accommodation to WellPoint. While this is a closer question, it is not a factor that outweighs the more definite evidence of Suskovich's tax returns and his contractual agreement with Trasys.

### 6. Beliefs of the parties

The estate finally argues that the district court should not have resolved the "beliefs of the parties" factor in favor of WellPoint because there is a disputed issue of fact here—the testimony of Suskovich's widow that he considered himself an employee of WellPoint and Trasys. Trasys and WellPoint argue that the other evidence in the record contradicts this statement. First, they argue that Suskovich's tax returns, which he signed under penalty of perjury, claim he was a sole proprietor of a consulting business and list no wages from employment. Second, Suskovich's resumes, which he prepared while working for Trasys and WellPoint, list his occupation as an "independent computer consultant." He also listed himself as a subcontractor and a salesman on his invoices, and listed himself as a contractor on a form he prepared to get access to WellPoint's computer system.

Moreover, WellPoint argues the deposition testimony does not establish that Suskovich believed he was an employee, merely that he "felt that due to the way he was treated" that he was considered an employee. This point may be parsing the statement a little too closely, but WellPoint also makes the stronger point that this testimony is inadmissible hearsay. The estate argues that it is admissible under Fed. R. Evid. 803(3) as a statement of a then-existing mental condition. However, the "mental conditions" referred to in Rule 803(3) are things such as intents, plans, motives, or designs, and not statements of belief. In fact, statements of belief are specifically inadmissible under the rule to prove the fact remembered or believed, unless it relates to the terms of a will, which the statement here does not. Fed. R. Evid. 803(3). Thus the testimony of Suskovich's widow would not be admissible at trial, or on summary judgment. Even if the statement is admissible, however, this is hardly enough to create a disputed issue of fact, as the other evidence—the tax returns, resumes, tax forms, and contractual agreement with WellPoint Virginia, which explicitly disclaims an employer-employee relationship—overwhelmingly favors the conclusion that Suskovich considered himself an independent contractor.

### 7. Other factors

Three other factors, the "distinct occupation or business" factor, the "kind of occupation" factor, and the "skill required" factor, were all resolved in favor of WellPoint and Trasys, since Suskovich had the sort of advanced

programming skills that allowed him to contract his work out to a number of companies, and even started his own business, Indy Imaging, Inc. These factors are not contested on appeal.

### 8. Conclusion

With the exception of the instrumentalities factor, which should not weigh heavily in the estate's favor under the circumstances, and the regular part of business factor, which would at most weigh only slightly against Trasys, not a single factor in the test supports the conclusion that Suskovich was an employee rather than an independent contractor. In fact, overwhelming evidence suggests that he considered himself an independent contractor, filed his tax returns as an independent contractor, and was compensated like an independent contractor. Accordingly, the district court properly awarded summary judgment to WellPoint and Trasys on this issue.

### C. Whether the district court improperly admitted the statements of Eberhard and Jeschke in violation of the Indiana Dead Man Statute.

The estate next argues that the district court improperly considered the testimony of Eberhard and Jeschke, who testified that Suskovich did not consider himself an employee because he routinely rejected offers of regular employment as a computer programmer with WellPoint. Specifically, the estate argues that this testimony is barred by the Indiana Dead Man Statute, Indiana

Code § 34-45-2 *et seq.* We can divide our discussion of this issue into three subsidiary issues. First, whether the Indiana Dead Man's Statute applies to a proceeding in federal court. Second, whether the testimony at issue actually ran afoul of the statute. Third, whether the error, if any, was or was not harmless. Because this is an evidentiary issue, this court reviews only for an abuse of discretion. *Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1175 (7th Cir. 2008).

The estate made two federal law claims—under the FLSA and ERISA—and one state law claim. WellPoint and Trasys thus argue that the Dead Man's Statute should not apply in federal court. The law of this circuit is fairly clear that where state law provides a federal court with the grounds for its decisions, that court should also apply state law restrictions on the competency of witnesses. The evidentiary standard in a case such as this one, where both federal and state law claims are involved, is less certain. District courts in this circuit that have considered the issue have previously held that Federal Rule of Evidence 601, which creates a broad presumption of competency, applies to cases alleging both federal and state law claims. *See Estate of Chlopek v. Jarmusz*, 877 F. Supp. 1189, 1193 (N.D. Ill. 1995); *see also Donohoe v. Consolidated Operating & Production Corp.*, 763 F. Supp. 845, 860-61 (N.D. Ill. 1990), *vacated on other grounds* 982 F.2d 1130 (7th Cir. 1992). This rule conforms with the Advisory Committee's Note accompanying Federal Rule of Evidence 501, which states that "[i]f the rule proposed here results in two conflicting bodies of privilege law applying to the same piece of evidence in the same case, it is contemplated that

the rule favoring reception of the evidence should be applied." Fed. R. Evid. 501. Accordingly, Rule 601, rather than the Indiana Dead Man's Statute, applies to the competency of witnesses, at least insofar as the evidence relates to any of the federal claims. However, that rule provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with state law." Fed. R. Evid. 601. We thus still need to consider whether the Indiana Dead Man's statute would bar testimony if the evidence related solely to the common law claims.

The Indiana Dead Man's Statute states, in brief, that in a case where an executor or administrator of an estate is a party and the estate may receive or be liable for or receive a judgment in the action, a person who is a necessary party to the issue or case and whose interest is adverse to the estate is not competent to testify. Indiana courts hold that "the general purpose of the Dead Man's Statute is to protect the decedent's estate from spurious claims." *Bedree v. Bedree*, 747 N.E.2d 1192, 1195 (Ind. Ct. App. 2001). While the facts of this case satisfy a few of the requirements of the Dead Man's Statute, it is a stretch to hold that Eberhard and Jeschke are necessary parties or have interests adverse to the estate. Eberhard and Jeschke testified that they discussed regular employment with Suskovich at various times, but that he wanted to continue with his original arrangement with WellPoint. The estate argues that because both are employees of WellPoint, their interests are adverse to the estate's and

thus that they are incompetent to testify. But nothing in the record suggests that Eberhard or Jeschke have any personal stake in the outcome of the litigation, and the estate's interpretation of the statute would sweep in any adverse witness who would testify against an estate in a case brought by the estate. Nor are Eberhard and Jeschke "necessary parties" to the action or issue, as they are not named in the suit. The district court thus did not abuse its discretion in considering this testimony on summary judgment.

**D. Whether summary judgment is appropriate for the defendants on the alternative grounds that even if Suskovich was an employee he was not eligible for FLSA or ERISA benefits, and is ineligible for common law indemnification.**

WellPoint and Trasys make a final series of arguments showing that even if the estate prevails on the issue of whether or not Suskovich was common law employee, the estate cannot prevail on its FLSA, ERISA, or common law indemnification claims. The estate's FLSA claim is based on a purported failure to pay Suskovich overtime for the weeks where he worked more than forty hours. The FLSA, however, contains exemptions to the overtime pay requirement that would cover Suskovich. The first is an exemption for computer programmers, software analysts, computer engineers, and other similarly skilled workers. 29 U.S.C. §§ 213(a)(1), 213(a)(17). The exemption applies to employees who earn more that $27.63 per hour, and whose primary duties are related to computer

systems or programs. 29 C.F.R. § 541.401(b). WellPoint also claims that Suskovich would be ineligible for overtime under the FLSA because he was a highly compensated worker who earned over $100,000 per year. *See* 29 C.F.R. § 541.601 (applying an exemption to the overtime requirements for employees who earn in excess of $100,000 and who perform primarily non-manual work, such as office work).

With respect to the ERISA claims, the estate is seeking damages for WellPoint and Trasys' alleged failure to enroll Suskovich in retirement benefit plans for which he was eligible. Eligibility under ERISA is not automatic for common law employees, however. A plaintiff must also demonstrate that he was eligible under the terms of the employer's own benefit plans. "Nothing in ERISA, however, compels a plan to use the term 'employee' in the same way it is used in the statute. Indeed, because a plan governed by ERISA need not include all categories of employees there is no reason to expect that it would." *Trombetta v. Cragin Fed. Bank Ownership Plan*, 102 F.3d 1435 (7th Cir. 1996) (internal citation omitted). Both Trasys and WellPoint cite their own employee benefit plans, which include the caveat that anyone not treated as an employee who is later ruled to be a common law employee in a lawsuit remains ineligible for benefits. WellPoint makes the same argument with respect to the estate's breach of contract claims against them, arguing that even if Suskovich was a common law employee he never had an employment contract that would have entitled him to fringe benefits such as participation in the company's employee stock purchase plan.

Finally, both WellPoint and Trasys argue that Suskovich is not eligible for indemnity under Indiana law. Common law indemnity in Indiana requires a court's determination that the party seeking indemnity is without fault. *Bourbon Mini-Mart v. Gast. Fuel & Serv., Inc.*, 783 N.E.2d 253, 257-58 (Ind. 2003). The estate seeks indemnity for his back taxes based on his failure to file tax returns for several years, failure to pay withholding and income tax, and claiming improper deductions. These failures, they argue, mean that he was at fault for his tax liability and thus cannot seek common law indemnification.

The estate's response to all three arguments urges this court to overlook the alternative grounds because they were not ruled on by the district court. Of course, this court can affirm summary judgment on any non-waived ground, even if the district court did not address it. *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 173 (7th Cir. 1996). The estate claims, however, that these alternative grounds all involve factual disputes that the district court did not address, and could not resolve on summary judgment. However, the estate does not present any evidence contesting the applicability of the FLSA exemptions, or establishing Suskovich's eligibility under either Trasys or WellPoint's benefit plans, or evidence that Suskovich properly paid his taxes every year. While we need not reach this question, having already determined that the district court correctly held that Suskovich was an independent contractor rather than an employee, we simply note that these alternative grounds would also provide a basis for affirming the judgment of the district

court even assuming arguendo that Suskovich was a
common law employee.

### III.  Conclusion

For the foregoing reasons, the judgment of the district
court is AFFIRMED.